# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-2077**

|  |  |
|---|---|
| RANDALL S. BLANK, M.D., Ph.D., | Chief Special Master Corcoran |
| Petitioner, | Filed: March 23, 2026 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Kirk Tripp Otto, Siri & Glimstad, LLP, Richmond, VA, for Petitioner.*

*Jamica Marie Littles, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT[1]

On October 26, 2021, Randal S. Blank, M.D., Ph.D., ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") following an influenza ("flu") vaccine received on September 23, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner more likely than not suffered the residual effects of his vaccine-related injury for more than six months, and that he has

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

satisfied all of the requirements for a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.     Relevant Procedural History

The parties engaged in settlement discussions from June 2023 through September 2024, when they reached an impasse. Respondent filed his Rule 4(c) Report on November 12, 2024 contending that Petitioner has failed to satisfy the statutory severity requirement. Rule 4(c) Report at 6-10. Petitioner subsequently filed a Motion for Ruling on the Record ("Mot.") on January 13, 2025. ECF No. 48-49. Respondent filed a response ("Resp.") on March 25, 2025. ECF No. 52.

## II.     Relevant Facts

### A.  Medical Records

Petitioner was a 61-year-old anesthesiologist when he received a flu vaccine in his left shoulder on September 23, 2020. Ex. 6 at 2; Ex. 1 at 1. He had no history of pain or dysfunction of his left shoulder at the time. Mot. at 2; Resp. at 2.

On October 12, 2020, Petitioner was seen at employee health for shoulder pain that began within a few hours of his vaccination, but then worsened over the following two weeks. Ex. 3 at 296. On exam, he had full range of motion with pain during "extreme abduction," and tenderness to deep palpation of the deltoid. *Id.* at 297. Petitioner was advised to use ice and ibuprofen and to avoid aggravating activities. *Id*. Petitioner called into employee health again on December 2, 2020, to reporting continued shoulder pain, now with "raising arm above shoulder height and with external rotation." *Id*. at 277. He was referred to an orthopedist. *Id*.

Petitioner saw an orthopedist on December 8, 2020. Ex. 3 at 238. He reported left shoulder pain "that developed after flu shot in September 2020." *Id*. at 239. On exam, he had nearly full range of motion, with a "catch" at 90 degrees of forward elevation, internal rotation only to his lumbar vertebrae, and pain with external rotation. *Id*. at 241. X-rays revealed moderate osteoarthritis in the AC and GH joints. *Id*. at 235. He was diagnosed with caustic bursitis [post] incorrectly administered flu shot and moderate glenohumeral arthritis. *Id.* at 242. Petitioner received a steroid injection and was instructed to follow-up if his "pain fail[ed] to improve." *Id*. at 242.

Petitioner returned to the orthopedist and saw a physician assistant on March 1, 2021. Ex. 3 at 166. He reported good relief from the steroid injection, but that his pain had "returned and [was] even worse than before." *Id.* Petitioner received a second steroid injection. *Id.* at 168.

Petitioner returned to his orthopedist a week later to follow up. Ex. 3 at 117. He reported "no relief" from the second steroid injection, and that he continued to have "significant pain" with overhead activities. *Id.* He was diagnosed with left shoulder bursitis and moderate osteoarthritis. *Id*. at 118. Petitioner was sent for an MRI, which revealed a "[f]ull-thickness tear of the posterior supraspinatus and anterior infraspinatus with differential tendon retraction…Diffuse labral degeneration and degenerative tearing…Severe glenohumeral synovitis[,] Intra-articular biceps tendinosis with tenosynovitis, and a probable small Hill-Sachs deformity." *Id.* at 82-83.

On March 16, 2021, Petitioner returned to the orthopedist to review his MRI results. Ex. 3 at 55. The doctor's review of the MRI was that Petitioner had "advanced glenohumeral osteoarthrosis with [a] superimposed inflammatory reaction to previous [flu] vaccine administration." *Id.* at 57. He noted that the "MRI [was] quite impressive," with notable synovial reaction with debris and fluid in subacromial space." *Id.* Although an arthroscopy was discussed, Petitioner elected to treat with physical therapy. *Id*.

On March 18, 2021 (now five months and 25 days after vaccination), Petitioner had an initial physical therapy evaluation. Ex. 3 at 46. He reported receiving a vaccination "too close to the joint and quickly develop[ing] severe shoulder pain." *Id.* He stated that he was unable to perform his everyday activities such as weightlifting, swimming, and running. *Id.* at 47. His range of motion was reduced, with "extreme pain with abduction and external rotation. *Id.* Treatment was planned for once or twice a week for 12 weeks. *Id.* at 49. He was also given a home exercise program. *Id*. at 48.

Between March and October 2021, Petitioner sought care for unrelated issues including a dental appointment, two vision appointments, an endoscopy, and a visit with an internist. Ex. 3 at 26, 6-8; Ex. 7 at 577, 523, 469. But he did not in this timeframe seek shoulder-specific treatment.

On October 15, 2021 (now seven months since his last shoulder focused treatment), Petitioner attended a second physical therapy session. Ex. 7 at 415. The recorded history of the problem was identical to his previous sessions. *Id*. at 416. Both active and passive range of motion were decreased. *Id*. Again, therapy was planned for once or twice a week, over a 12-week period. *Id*. at 418. Petitioner returned for a third and final physical therapy session on November 11, 2021. *Id.* at 319.  He reported "no significant changes." *Id.*

### B.  Witness Statements

Petitioner filed a signed declaration in support of his claim. *See* Ex. 1.  He described "severe pain, markedly exacerbated by movement," within 24 hours after the injection. *Id*. at 1.  At the time of his declaration (September 14, 2021), Petitioner stated

that he was continuing to seek treatment with his orthopedist, including possible surgery. *Id*. at 2.

Petitioner's wife, Janis Gretz, M.D., also provided a signed declaration. *See* Ex. 2. Dr. Gretz stated that "[s]hortly after this injury, [Petitioner's] pain was so debilitating that it prevented him from sleeping and working." *Id.* at 1.  She stated that he continued to be impacted at the time of her statement (September 2021), including being "frequently awakened at night," and being unable to engage in his previous recreational activities. *Id*. at 1-2.

### III.    Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs*., 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events

when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

## IV.     Findings of Fact - Severity

To satisfy the statutory severity requirement in this case, Petitioner must demonstrate that his symptoms more likely than not continued until at least March 23, 2021 – six months after the onset of his pain on September 23, 2020 (the day of vaccination). The record establishes (and the parties agree) that Petitioner treated his shoulder pain through his physical therapy evaluation on March 18, 2021 – five months and 25 days after vaccination – but then did not seek additional care for approximately seven months. *See* Mot. at 11; Resp. at 8. Respondent contends that "Petitioner's

5

medical treatment fell short of satisfying the statutory severity requirement on March 23, 2021, by at least one week." Resp. at 8.

This argument, however, ignores the significant symptoms documented in Petitioner's medical records in the March 16-18th period. On March 16, 2021, Petitioner's orthopedist noted both advanced glenohumeral osteoarthritis and "notable synovial reaction with debris and fluid in subacromial space." Ex. 3 at 57. He provided a referral to physical therapy to "evaluate and treat left shoulder pain, progress with ROM and strengthening." *Id*. at 64. On March 18, 2021, Petitioner's physical therapist noted "extreme pain" with abduction above 90 degrees and external rotation. *Id*. at 47. Treatment for twelve weeks was planned. *Id*. at 49. Given the significant MRI findings, the physical examination findings, and the lengthy planned treatment, it is unlikely that Petitioner's symptoms resolved within five days of the six-month cut-off, as suggested by Respondent.

Respondent further argues that the seven-month gap in treatment "[broke] any claimed nexus between his then shoulder symptoms and 2020 flu vaccination after months with no care." Resp. at 9. But the record from Petitioner's return to physical therapy on October 15, 2021, suggests that his injury still existed. *See* Ex. 7 at 415-416. The history of injury in both records is identical. *Id*. at 415; *See also* Ex. 3 at 46. His exam was also similar, with findings of pain with abduction above 90 degrees and with external rotation. Ex. 7 at 416; *See also* Ex. 3 at 47. And there is no evidence of any intervening source of unrelated shoulder pain.

Petitioner notably did receive medical care for unrelated conditions during the treatment gap, and has not provided an explanation for why during this time he did not complain of shoulder problems or maintain treatment for them. Resp. at 9-10. Petitioner had a dental exam, two vision appointments, an endoscopy, and one visit for a sore throat and hiccups during the treatment gap. Resp. at 10. But a claimant would not reasonably be expected to report shoulder problems to other kinds of medical care specialists. And he had already established care for his shoulder with an orthopedist and physical therapist, suggesting he would be unlikely to seek an alternative provider. Further, although Petitioner's written statement could provide more specific details of his activities and experience during the treatment gap, he alleged in his Petition that he had "continued to work his home exercise program since March, had a follow up physical therapy appointment in October, and will continue" with treatment "as prescribed." Petition at ¶11. And Petitioner credibly argues that as a physician himself, he "understood the benefits and risks of surgery, he had a HEP PT program, and he decided to see if the injury would heal on its own over time." Mot. at 13.

Thus, after consideration of the entire record, I find that it is more likely than not that Petitioner continued to suffer the residual effects of his vaccine-related injury

thorough at least March 23, 2021 – satisfying the statutory severity requirement. But gaps in treatment always inform any award for pain and suffering, which Petitioner should consider when evaluating his demand for damages.

## V.    Ruling on Entitlement

### A.    *Requirements for Table SIRVA*

Respondent has not contested Petitioner's proof on the elements of a Table SIRVA. *See* ECF No. 46, 52; *See also* 42 C.F.R. § 100.3(c)(10)(i)-(iv). Therefore, I find that Petitioner has provided preponderant evidence to establish that he suffered a Table SIRVA injury.

### B.    *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received a flu vaccine in his left arm on September 23, 2020. Ex. 6 at 2; Section 11(c)(1)(A) (requiring receipt of a covered vaccine). Additionally, Petitioner has stated that he has not filed any civil action or received any compensation for his vaccine-related injury, and there is no evidence to the contrary. Ex. 4; Section 11(c)(1)(E) (lack of prior civil award). And as noted above, I have found that severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

7